UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Lee DAHMS,
Defendant–Appellant.

No. 90–30269.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1991.

Decided July 2, 1991.

J. Cort Harrington, Jr., Helena, Mont., for defendant-appellant.

James E. Seykora, Asst. U.S. Atty., Billings, Mont., for plaintiff-appellee.

Before WRIGHT and O'SCANNLAIN, Circuit Judges, and GEORGE,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

I

In 1975, Michael Dahms pleaded guilty in Michigan state court to assault with attempt to rob while armed and was sentenced to prison. He was released on parole in August 1981 and released from parole in April 1983. In June 1989, while in Montana, he was involved in an aggravated assault, using one of his two shotguns. He was charged with assault in state court and in federal court for being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). His motion to dismiss the federal indictment was denied and he entered a conditional guilty plea.

---

* Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

Dahms now appeals his federal conviction, arguing that the indictment should have been dismissed because he was not a previously convicted felon as defined in § 921(a)(20). We agree and reverse.

■ The district court's decision to deny the motion to dismiss was grounded on its interpretation of the federal statute. We review this interpretation de novo. *See United States v. Gomez*, 911 F.2d 219 (9th Cir.1990).

## II

■ Title 18 U.S.C. § 922(g)(1) states that it is unlawful for any person:

who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition ... which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (1988). Section 921(a)(20) defines conviction:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (1988).

The first sentence of § 921(a)(20) dictates that the law of the state in which the felon was initially convicted governs the applicability of § 922(g)(1). *Gomez*, 911 F.2d at 220. Dahms was originally convicted in Michigan and we must look to the law of that state.

The second sentence of § 921(a)(20) establishes a two-stage analysis. Initially, we must determine whether Dahms' civil rights were substantially restored under Michigan law. If they were, we must determine whether that law nonetheless expressly restricts his right to possess firearms, thus subjecting him to conviction under the federal statute. *See id.* at 220–21.

### A

Dahms argues that because he had the right to vote, to hold public office and to serve on a jury his civil rights were substantially restored even though Michigan does not have a general restoration statute. The government asserts that the absence of such a general statute indicates that Dahms' rights were not restored. Whether these rights, absent a general restoration statute, are sufficient to constitute substantial restoration of civil rights is a question of first impression in this circuit.

■ We look to the whole of state law to determine whether his civil rights were restored within the meaning of § 921(a)(20). *Gomez*, 911 F.2d at 220; *see United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir.1990). The restoration must be more than de minimis. *Cassidy*, 899 F.2d at 549. It must be substantial, but need not be complete. *Gomez*, 911 F.2d at 220.

■ After careful review of the legislative history of § 921(a)(20), the Sixth Circuit in *Cassidy* declared that

Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury.

*Cassidy*, 899 F.2d at 549. We find this reasoning persuasive and hold that a convicted felon who, having first lost them upon conviction, regains the rights to vote, to sit on a jury and to hold public office in the state in which he was originally convicted has had his civil rights substantially restored under § 921(a)(20).

■ Here, several sections of the Michigan Code suspend a convicted felon's right to vote;[1] to hold public

1. A person who, in a court of this or another state or in a federal court, has been legally convicted and sentenced for a crime for which the penalty imposed is confinement in

office;[2] and to serve on a jury.[3] Once incarceration has ended, however, these rights are restored automatically by the force of the very laws that suspend them. That these rights are found in separate sections of the Michigan Code as opposed to a single statute does not change their effect. We find that Dahms' rights were substantially restored.

The government insists that our decision in *United States v. Engesser*, 788 F.2d 1401 (9th Cir.), *cert. denied*, 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986), compels a different result. We disagree. In *Engesser*, we held "that Montana's restoration of [a felon's] civil rights did not affect the [federal] government's right to regulate his possession of a firearm as a convicted felon" under a statutory predecessor to § 922(g)(1): 18 U.S.C.App. § 1202(a)(1), *repealed by* Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(b), 100 Stat. 449 (1986). In so doing, we explained:

> The [automatic] restoration of Engesser's civil rights under Montana law ... did not preclude the federal government from regulating his possession of a firearm as a convicted felon. *See United States v. Bergeman*, 592 F.2d 533, 536 (9th Cir.1979). Congress did not intend that the federal firearms statutes would be applied in a patchwork fashion with enforcement dependent upon the law of the state in which the predicate conviction occurred. *Id.* at 537. A state expunction law such as that contained within the ... Montana Constitution can "determine the status for the purposes of

state law, [but] it [can]not 'rewrite history' for the purposes of 'the administration of the federal criminal law or the interpretation of federal criminal statutes.'" *Hyland v. Fukuda*, 580 F.2d 977, 980–81 (9th Cir.1978) [ (citations omitted) ].

The very Act that repealed the provision at issue in *Engesser*, however, enacted the current version of 18 U.S.C. § 921(a)(20). *See* Firearms Owners' Protection Act, Pub.L. No. 99–308, § 101, 100 Stat. 449 (1986). And with its reference to the law of the jurisdiction where the predicate conviction occurred, § 921(a)(20) quite clearly does contemplate "that the federal firearms statutes w[ill] be applied in a patchwork fashion with enforcement dependent upon the law of the state in which the predicate conviction occurred." *Engesser*, 788 F.2d at 1405. In light of this change in the law and our subsequent decision in *Gomez*, the government's reliance on *Engesser* is not well taken.

**B**

 The government contends that because Michigan restricted Dahms' right to possess a pistol, one type of firearm, he was subject to conviction under the federal firearms statute for possessing a shotgun. Whether § 922(g)(1) applies to a felon who possesses one type of firearm when state law restricts his right to have another type is an issue of first impression. We hold that it does not.[4]

---

jail or prison shall not vote, offer to vote, attempt to vote, or be permitted to vote at an election while confined. Mich.Comp. Laws § 168.758b (1989).

2. If any candidate for any public office at any election in this state shall be convicted of a felony, as defined in this act, the election of such candidate, if he has been elected, shall be void; and if he shall enter into the office for which he was elected, an information in the nature of a quo warranto to oust him from such office may be filed in the supreme court or the proper circuit court. Mich.Comp. Laws § 168.938 (1989).

3. "To qualify as a juror, a person shall ... [n]ot be under sentence for a felony at the time of jury selection." Mich.Comp. Laws § 600.1307a (1989).

4. We emphasize that our holding does not rest upon an interpretation of the term "firearm" as it appears in § 922(g)(1). Michigan state law would be irrelevant to that question. Section 922(g)(1) does not refer to or incorporate the law of the jurisdiction where the predicate conviction occurred for purposes of *defining what constitutes a "firearm."*

Rather, our holding rests upon an interpretation of the "unless" clause in § 921(a)(20), which states that a felon cannot be convicted of violating § 922(g)(1) if he has had his civil rights restored under the law of the predicate conviction's jurisdiction *"unless* such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20) (1988) (emphasis added). Whether Michigan's restoration of Dahms' civil rights contains a restriction

The Fourth Circuit in *United States v. McLean,* 904 F.2d 216 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990), provided some insight. McLean was indicted for possessing a handgun which he, as a convicted felon, was expressly prohibited from possessing under North Carolina law. The district court's dismissal was reversed and the indictment reinstated. The court noted, however, that "[i]f we were faced with deciding the validity of an indictment of an ex-felon for possessing firearms as allowed under the North Carolina Felony Firearms Act, we might reach a different result." *Id.* at 219 n. 4. We conclude that a different result would follow under such circumstances, and therefore does follow here.

"Congress intended 'deference to state law with respect to the federal firearms privileges of persons convicted in that state.'" *Id.* at 218 (quoting *Cassidy,* 899 F.2d at 549). Here, Michigan law restricts only the right to possess pistols and carry a concealed weapon. Section 28.422 [5] of the Michigan Code stipulates that a person who has been convicted or incarcerated for a felony can not obtain a license to carry a pistol for eight years after release from incarceration. Dahms, who had been released from parole for less than eight years when he was arrested in Montana, admittedly could not have carried a pistol. But he was found in possession of two shotguns. Because Michigan distinguishes between pistols and shotguns in its licensing and concealment statute, *see* Mich.Comp. Laws § 750.222(a), (d), we cannot say that Michigan intended to restrict a felon's ability to possess all types of firearms through § 28.422.

To apply § 922(g)(1) and conclude that Dahms' right to possess any firearm was restricted under federal law because the state restricted his possession of a pistol would undermine the explicit deference to state law in § 921(a)(20). We find the resulting application of variable state firearms restrictions through the federal statute was intended by Congress. *See Cassidy,* 899 F.2d at 547–48.

 Our construction of the federal statute is in accordance with the rule of lenity. Where the language of a statute is open to more than one interpretation, the rule of lenity applies and the court should choose the interpretation least likely to impose penalties unintended by Congress. *United States v. Sherbondy,* 865 F.2d 996, 1009 (9th Cir.1988). Arguably, it is not readily apparent from the statute's use of "firearm" whether the federal statute is applicable in a case such as this where the state restricts one kind of firearm and the defendant has another. Because upholding Dahms' conviction under § 922(g)(1) would be inconsistent with the rule of lenity, we conclude the federal firearm restriction is limited by the degree of state firearms restrictions.

### III

Dahms' civil rights were substantially restored under Michigan law as contemplated by § 921(a)(20). In addition, because Michigan did not expressly restrict his right to possess any firearms other than pistols, § 922(g)(1) was inapplicable.

REVERSED.

---

on his right to possess firearms is a question that can be answered only by reference to that Michigan law. *See United States v. Geyler,* 932 F.2d 1330, 1333–34 (9th Cir.1991).

**5.** (1) A person shall not purchase, carry, or transport a pistol without first having obtained a license therefor as prescribed in this section ... A license shall not be granted

under this section to any person unless the applicant meets all of the following: ... (c) Has not been convicted of a felony or has not been incarcerated as a result of a felony conviction in this state or elsewhere during the 8–year period immediately preceding the date of application.
Mich.Comp. Laws § 28.422 (1989).