**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Theodore Albert GEYLER,**
**Defendant–Appellant.**

**No. 89–10162.**

United States Court of Appeals,
Ninth Circuit.

Nov. 8, 1991.

Robert J. Hirsh, Brian I. Rademacher, Hirsh, Sherick & Murphy, Tucson, Ariz., for defendant-appellant.

Gary Clifford Korn, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before LIVELY,* FLETCHER and REINHARDT, Circuit Judges.

## ORDER

The United States petitioned for rehearing with suggestion for rehearing en banc of our decision to reverse defendant-appellant Geyler's conviction for possession of firearms by a convicted felon. We deny the petition for rehearing. An order regarding the en banc suggestion will be issued subsequently.

■ Geyler challenged his conviction on the ground that a prior federal conviction no longer qualified as a "conviction" because Arizona law had restored his civil rights upon his absolute discharge from imprisonment. Under federal firearms law, "[a]ny conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter." 18 U.S.C. § 921(a)(20). We held that because restoration of civil rights is exclusively a state procedure, the plain language of § 921(a)(20) indicates that "a state's restoration of civil rights to a person eliminates the underlying conviction as a predicate offense for purposes of the federal firearms laws, whether the conviction was for a state or federal offense." *United States v. Geyler*, 932 F.2d 1330, 1334 (9th Cir.1991).

The government notes that 18 U.S.C. § 925(c) constitutes a federal provision for the relief of federal firearms disabilities, and urges that we consider § 925(c) the

---

* Hon. Pierce Lively, Senior United States Circuit Judge for the Sixth Circuit, sitting by designa-    tion.

equivalent of a state procedure for the restoration of civil rights. That argument overlooks the important fact that § 925(c) does not restore *civil rights;* it only restores the one, limited right to carry firearms. The state restoration procedure, in contrast, restores a felon's right to vote, to serve on a jury, and to participate in numerous other activities considered to be civil rights. Section 921(a)(20), the provision at issue in this case, refers to "any conviction ... for which a person ... has had *civil rights* restored." It does not refer merely to "any conviction for which a person has had his *right to carry a firearm* restored." In light of the fact that the restoration of rights is a specific procedure used by all fifty states, we must assume that Congress intended to refer to that procedure when it chose to use language so directly on point. The existence of § 925(c) merely provides an alternate route by which a convicted felon who does not fall within the terms of § 921(a)(20) can have his right to carry a firearm restored.

■ The government argues for the first time in its petition for rehearing that we should consider the Bureau of Alcohol, Tobacco and Firearms' interpretation of the statute. Although the issue has been raised belatedly, we consider it nonetheless because of the importance of the issue, because of the fact that our opinion resolves a matter of first impression, and because "we are convinced that the government's failure to present the issue at the proper time was inadvertent or negligent rather than willful." *See Escobar–Ruiz v. INS,* 813 F.2d 283, 286 (1987), *aff'd,* 838 F.2d 1020 (9th Cir.1988) (en banc).

■ The agency interpretation to which the government points is located in a final rule promulgated by the Bureau of Alcohol, Tobacco and Firearms, effective May 2, 1988. *See* 53 Fed.Reg. 10,480 (1988). There, the Bureau published a definition of the phrase "crime punishable by imprisonment for a term exceeding 1 year." The agency's definition, in relevant part, repeats the statutory definition verbatim, as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of the Act or this part, unless such pardon, expunction, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms....

*Id.* at 10,490. Where the statutory definition ends, however, the Bureau's definition goes on to add the following language: "or unless the person is prohibited by the law of the jurisdiction in which the proceedings were held from receiving or possessing any firearms." *Id.* The agency explained its decision to include the final clause as resting on its determination that "it comports with legislative intent that a person convicted of a crime punishable by a term of imprisonment exceeding one year should continue to have Federal firearms disabilities unless the person's rights to receive and possess firearms have been restored by the jurisdiction where the conviction occurred." *Id.* at 10,481.

We fail to understand the government's new-found reliance on the agency rule. The language to which the government points does not have the meaning that the government attributes to it. Rather, the additional clause inserted into the Bureau's rule provides that a pardoning or restoring jurisdiction's actions *can* serve to nullify a conviction for purposes of the federal firearms laws unless the prosecuting jurisdiction's statutes or rules prevent it from doing so. As applied in this case, the question is whether the federal government's statutes or rules prevent a state's restoration of civil rights from nullifying a conviction for purposes of the federal firearms laws. In order to answer that question, the Bureau's rule tells us that we must look to federal law. What we must look to then is § 921(a)(20)—the very provision that is in dispute. The rule itself contains *no additional substantive limitations;* it merely tells us to examine the statute.

The government's effort to interpret the disputed statutory provision by reference to a rule that does no more than refer us to the statute is a classic example of tautological reasoning. While the rule may have significant practical effect where state B purports to restore the rights of a felon convicted in state A but state A's laws ban any restoration of the right to possess weapons, in light of § 921(a)(20) it adds nothing whatsoever to a case in which the federal government is the prosecuting jurisdiction. In the case before us, therefore, there is simply no agency interpretation to which to defer.

 Even if we were to agree with the government's wholly unwarranted interpretation of the Bureau's rule, principles of deference to administrative agencies would not require us to defer in this case. The government is correct that where a statute is silent or ambiguous on an issue, the courts should defer to a reasonable interpretation by the administering agency. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Here, however, as we have previously explained, the statute is neither silent nor ambiguous. *Geyler*, 932 F.2d at 1332–35. In such circumstances, we must give effect to the plain language that Congress chose. *See id.; Quinlivan v. Sullivan*, 916 F.2d 524, 526–27 (9th Cir.1990).

In light of the foregoing, the government's petition for rehearing is

DENIED.

FLETCHER, Circuit Judge:

Dissent from majority order denying petition for rehearing and amendment to dissent:

I dissent from the majority's order. It simply perpetuates and compounds the majority's errors in its opinion filed May 13, 1991.

I amend my dissent to the majority opinion filed May 13, 1991 by adding the following as an additional paragraph at the end of the dissent:

We should also defer to an administering agency's reasonable interpretation of an ambiguous statute. *Chevron USA v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The Bureau of Alcohol, Tobacco and Firearms has identified as "legislative intent" that Federal firearms disabilities should continue "unless the person's rights to receive and possess firearms have been restored *by the jurisdiction where the conviction occurred.*" 53 Fed.Reg. 10,-480 (1988) (emphasis added). The agency's interpretation is not the tautology the majority makes it out to be. The federal jurisdiction, where this conviction occurred, has a specific mechanism for restoring the right to receive and possess firearms: 18 U.S.C. § 925(c). Where the convicting jurisdiction has declined to restore the civil right or rights stripped from a defendant through that jurisdiction's own restoration procedure, Congress intended that the conviction remain a predicate offense.