961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darrin MERIDETH, Defendant-Appellant.
 No. 91-1386.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Darrin Merideth appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and the enhancement of his sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). On appeal, the principal issues presented are (1) whether defendant's right to due process was violated by the decision to prosecute him under federal law even though he was arrested by Detroit police officers, (2) whether defendant was entitled to a judgment of acquittal at the close of the government's evidence because the government failed to prove that defendant's civil right to possess a firearm had not been restored under Michigan law, (3) whether defendant's state law conviction which served as the predicate for his conviction as a felon in possession of a firearm falls within the exception clause of 18 U.S.C. § 921(a)(20), and (4) whether defendant was deprived of a fair trial when the district court permitted a police officer to explain briefly why his attention was drawn to defendant's speeding car. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On September 12, 1990, three Detroit policemen, Officer Joseph Mairorano, Officer James Wood, and Sergeant William Crawford, were on patrol in a marked police car. At approximately 11:30 p.m., they noticed a brown Chevrolet with three people inside speeding down a residential street at 45 to 50 miles an hour. As the patrol began its pursuit, the driver of the car sped away, ran two stop signs, and finally stopped a few blocks away near an alley. Two of the officers, Mairorano and Wood, observed that the front seat passenger was trying to stuff something under the seat. In addition, at trial, Officer Mairorano, who was the driver of the police car, was permitted to testify, over the objection of the defendant, that he had prior information about a Chevrolet of the same general description from which shots had been fired on several occasions.
 
 
 3
 When the driver of the Chevrolet pulled over, defendant, who was the front seat passenger, exited the car and walked toward a nearby alley. Officers Mairorano and Wood approached the Chevrolet while Sergeant Crawford pursued defendant.
 
 
 4
 While Officer Mairorano asked the driver of the Chevrolet for the car's registration, Officer Wood illuminated the passenger compartment with his flashlight and called out to the other officers that he had found a gun. He opened the passenger door and picked up a .38 caliber blue steel revolver loaded with five bullets. Officer Wood testified that he did not attempt to preserve any fingerprints that may have been on the gun. At that point, Sergeant Crawford detained defendant in the alley. At a later time, it was determined that the Chevrolet was registered to defendant.
 
 
 5
 Defendant and the driver of the Chevrolet, Tracey Bernoudy, were arrested and held overnight. The charges against Ms. Bernoudy were later dismissed. The other passenger in the Chevrolet was Bernoudy's four year old child.
 
 
 6
 The following day, September 13, 1990, Detroit Police Detective Gerald Ward interviewed defendant and checked his criminal history. In a written statement, defendant claimed he was not in the Chevrolet when it was stopped, but that he was on the street nearby and walked over to the Chevrolet after the police stopped Ms. Bernoudy.
 
 
 7
 When Detective Ward learned that defendant had prior felony convictions, he contacted the federal Bureau of Alcohol, Tobacco and Firearms (ATF) by telephone. An ATF agent advised Ward that the ATF would accept the case. Thus, the State of Michigan did not bring charges against the defendant.
 
 
 8
 Defendant testified at trial that he was not in the Chevrolet when it was stopped. In addition to Ms. Bernoudy, her brother, Frank Bernoudy, and Ricardo Payne were called as defense witnesses. They all testified that defendant was not in the Chevrolet when it was stopped by the police.
 
 B.
 
 9
 As earlier stated, defendant was arrested on September 12, 1990, and was arraigned the following day on a magistrate's complaint. On September 17, 1990, a combined preliminary hearing and detention hearing was held, which resulted in defendant's being detained pending trial.
 
 
 10
 Subsequently, on October 10, 1990, defendant was charged in a one-count indictment alleging that on September 12, 1990, he possessed a firearm in violation of the Federal Gun Control Act, 18 U.S.C. § 922(g)(1). Thereafter, on October 22, 1990, the government filed notice that it would seek enhancement of any conviction pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e).
 
 
 11
 A jury trial commenced on November 29, 1990. On December 4, 1990, the jury convicted defendant of a violation of 18 U.S.C. § 922(g)(1). At sentencing on March 20, 1991, the government's motion for application of the enhanced sentencing provision of 18 U.S.C. § 924(e) was granted. Defendant was sentenced to the mandatory minimum sentence of 15 years imprisonment. This timely appeal followed.
 
 II.
 A.
 
 12
 Defendant first argues that he was deprived of procedural due process when Detroit police officers and agents of the federal Bureau of Alcohol, Tobacco and Firearms made the decision to prosecute him under federal law. Defendant asserts that when he was arrested by the Detroit police on September 12, 1990, he was arrested based on the belief of the police that he carried a pistol in a motor vehicle in violation of Michigan Compiled Laws § 750.227, which is a probationable offense punishable by a maximum period of incarceration of five years. However, defendant asserts that within thirteen hours of his arrest, he was prosecuted under federal law for a violation of 18 U.S.C. § 922(g)(1) which is punishable by mandatory imprisonment for five years. Further, the sentence was enhanced pursuant to 18 U.S.C. § 924(e). The mandatory minimum sentence provided under § 924(e) is fifteen years, and the maximum sentence is life imprisonment.
 
 
 13
 Defendant asserts that the sole motivation for his federal prosecution was the increased sentence he was facing under federal law. He claims that he was deprived of procedural due process in the decision to prosecute him under federal law because the decision was made by the Detroit police and Special Agent Vaga of the ATF. Defendant argues that nothing in the record suggests that any federal prosecutor was involved in the decisions to prosecute him under federal law.
 
 
 14
 In arguing that he was deprived of procedural due process, defendant principally relies on the reasoning of United States v. Williams, 746 F.Supp. 1076 (D.Utah 1990). The defendants in Williams were convicted of drug offenses under federal law; they claimed that their right to procedural due process had been violated. The Williams defendants had been arrested through the efforts of an intergovernmental task force, which was subject to an agreement specifying the operational policies and procedures for the task force. No federal prosecutors were involved with the task force and the agreement did not specify who had the responsibility, or how, to refer cases for federal prosecution.
 
 
 15
 Moreover, in Williams, federal prosecution exposed the defendants to mandatory minimum sentences of ten years imprisonment while under state law they faced one to 15 years imprisonment. The district court concluded that defendants' right to procedural due process had been violated, based upon the fact that police officers, not prosecutors, had exercised apparently unfettered discretion in deciding which cases would be referred for federal prosecution.
 
 
 16
 However, in United States v. Allen, Nos. 91-5205/5206, 1992 WL 8814 (6th Cir. Jan. 24, 1992), this court rejected the reasoning of the district court in Williams. This court noted that the reasoning in Williams had been rejected by the Tenth Circuit in United States v. Andersen, 940 F.2d 593 (10th Cir.1991). The Tenth Circuit in Andersen emphasized the broad discretion accorded to prosecutors in deciding whether or not to prosecute and what charges to file. Id. at 596. The Tenth Circuit further noted that, standing alone, the fact that a federal prosecutor is influenced by the penalties available on conviction does not give rise to a violation of either the Due Process or Equal Protection Clause of the federal constitution. Id. Lastly, the Tenth Circuit also noted that a defendant could be indicted, prosecuted, and convicted in federal court for conduct punishable under a federal statute even after a state court had convicted the defendant for the same conduct under a state statute. Id. Thus, the Tenth Circuit held that absent convincing evidence to the contrary it would not assume that prosecutors were acting as "rubber stamps" for the charging decisions of the Strike Force. Id. at 597.
 
 
 17
 Likewise, this court adopted the reasoning of the Tenth Circuit in Andersen and held that due process is not violated so long as federal prosecutors are not acting as rubber stamps for the police and exert their own discretion as to whether or not to prosecute. Allen, Nos. 91-5205/5206, slip op at 12. Furthermore, this same reasoning has also been adopted by the Fifth Circuit. See United States v. Carter, No. 90-1903, 1992 WL 22968, at * 11 (5th Cir. Feb. 12, 1992).
 
 
 18
 In this case, there is no evidence that the federal prosecutors were merely rubber stamping the charging decisions of the Detroit police. Although Detroit police made the initial arrest of defendant, they contacted the ATF after learning that defendant had previously been convicted of a felony. After being contacted by the Detroit police, Special Agent Vaga of the ATF told the Detroit police that the Bureau would take the case. Defendant was subsequently indicted by a federal grand jury, an action handled solely by federal prosecutors in their discretion. Therefore, defendant's claim that he was denied due process because the Detroit police and agents of the ATF made the decision to prosecute him under federal law is meritless.
 
 B.
 
 19
 Defendant next argues that his prior Michigan conviction could not serve as the predicate offense for his conviction as a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1). Defendant claims that because his civil rights had been automatically restored under Michigan law following the expiration of his sentence for his prior conviction, his prior conviction falls within the exception clause of 18 U.S.C. § 921(a)(20). Therefore, defendant asserts that his conviction as a felon in possession of a firearm is void, and that he was entitled to a judgment of acquittal at the close of the government's case because the government failed to prove that his civil right to possess a firearm had not been restored under Michigan law.
 
 
 20
 We have addressed this issue in United States v. Breckenridge, 899 F.2d 540 (6th Cir.), cert. denied, 111 S.Ct. 119 (1990), and United States v. Cassidy, 899 F.2d 543 (6th Cir.1990). 18 U.S.C. § 922(g)(1) makes it a federal crime for a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm in or affecting commerce. In this case, the parties stipulated at trial that defendant had been convicted of a crime punishable by imprisonment for more than a year and that the firearm in question had traveled in interstate commerce. However, 18 U.S.C. § 921(a)(20) states in relevant part:
 
 
 21
 ... Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess or receive firearms.
 
 
 22
 The effect of section 921(a)(20) is to eliminate the disabling effect of a felony conviction when the state in which the conviction occurred has made certain determinations, embodied in state law, regarding a released felon's civil rights and firearms privileges. Cassidy, 899 F.2d at 546. Where state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities. Id. Thus, if a "convicted felon" has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, the court must look to the whole of the law of the state where the conviction occurred to determine whether the convicted felon is entitled to vote, hold public office, serve on a jury, and also whether the convicted felon is entitled to exercise the privileges of shipping, transporting, possessing, or receiving a firearm. Id. at 549; Breckenridge, 899 F.2d at 542.
 
 
 23
 This court has not had the opportunity to address the question of the restoration of a released prisoner's civil rights under Michigan law, as Breckenridge involved New Jersey law and Cassidy involved Ohio law. This issue was addressed, however, by the Ninth Circuit in United States v. Dahms, 938 F.2d 131 (9th Cir.1991). In that case, which is relied on by defendant, the Ninth Circuit found that several sections of the Michigan Civil Code substantially restored a released felon's right to vote, to hold public office, and to serve on a jury automatically upon release. Id. at 133-34. Therefore, the Ninth Circuit found that Michigan law substantially restored a convicted felon's civil rights. Id. at 134.
 
 
 24
 Nevertheless, the Ninth Circuit also found that Michigan law restricts a convicted felon's right to possess pistols and carry a concealed weapon pursuant to Michigan Compiled Laws § 28.422. Id. at 134-35. However, because the defendant in Dahms had been prosecuted for possession of a shotgun, the Ninth Circuit found that he could not be prosecuted under 18 U.S.C. § 922(g)(1), because his civil rights had been substantially restored and because Michigan law did not restrict his right to possess firearms other than pistols. Id. at 134-35.
 
 
 25
 The Ninth Circuit's decision in Dahms is distinguishable from this case because defendant Merideth possessed a firearm which falls within the definition of a pistol under Michigan law. Michigan Compiled Laws § 28.421 defines a pistol as any firearm, loaded or unloaded, 30 inches or less in length, or any firearm, loaded or unloaded, which by its construction and appearance conceals it as a firearm. In this case, defendant was arrested and prosecuted for possession of a loaded .38 caliber revolver, a firearm which falls within the definition of pistol under Michigan law. Section 28.422 of the Michigan Code specified that a person who has been convicted or incarcerated for a felony cannot obtain a license to carry a pistol for eight years after release from incarceration.[1] The parties have stipulated that defendant was convicted of a felony on February 22, 1983. Thus, at the time of his arrest on September 12, 1990, the eight-year prohibition on possession of a pistol under Michigan law could not have expired.
 
 
 26
 Moreover, we need not decide whether defendant's civil rights were restored under Michigan law. At the time of his arrest, Michigan law expressly limited defendant's firearm privileges with respect to the type of firearm involved in this case. Therefore, at the time of his arrest on September 12, 1990, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year within the meaning of 18 U.S.C. § 921(a)(20). Consequently, defendant was subject to prosecution under 18 U.S.C. § 922(g)(1).
 
 C.
 
 27
 Defendant also argues that he was entitled to a judgement of acquittal at the end of the government's proof because the government failed to prove every essential element of the crime charged. Although it is unclear from the record as to whether defendant made a motion for acquittal at the close of the government's proof pursuant to Federal Rule of Criminal Procedure 29, he is not entitled to reversal of his conviction even assuming a Rule 29 motion was made.
 
 
 28
 Defendant principally relies on the case of United States v. Essick, 935 F.2d 28 (4th Cir.1991). In Essick, the Fourth Circuit found that the government failed to satisfy its burden of proving that the defendant had a prior felony conviction for purposes of section 922(g)(1). The defendant in Essick had been convicted in North Carolina of a felony on April 15, 1983. Id. at 31. Under North Carolina firearms statutes, a convicted felon was required to wait five years before being legally allowed to possess a handgun or other firearm with a barrel less than 18 inches in length. Id. Since the defendant in Essick was not arrested until September 8, 1989, the Fourth Circuit concluded that the government had failed to show that the defendant was within the five-year post-release period.
 
 
 29
 Essick is clearly distinguishable from this case. At trial, the parties stipulated that defendant Merideth was convicted of a felony on February 22, 1983. Unlike the five-year limitations in the North Carolina statute, Michigan law provides that a convicted felon may not possess a firearm for an eight-year post-release period. Thus, at the time of his arrest in September 1990, defendant was within the eight-year post-release period. Indeed, as the record shows, following defendant's prior conviction in February 1983, defendant was paroled on September 24, 1984. However, defendant was returned to prison as a parole violator on November 1, 1984. Therefore, defendant was within the eight-year post-release period under Michigan law both at the time of his arrest and his conviction in this case. Accordingly, defendant's argument that the government failed to prove an essential element of the crime charged is without merit.
 
 D.
 
 30
 Finally, defendant argues that he was deprived of a fair trial by the admission of Officer Mairorano's testimony explaining why his attention was drawn to defendant's speeding car. On direct examination, Officer Mairorano was permitted to testify, over defendant's objection, that his attention was drawn to defendant's speeding car, a brown Chevrolet, because during the four to five weeks prior to defendant's arrest, there had been reports received from the police patrol units on the afternoon shift in the area where defendant was arrested concerning shots being fired from a brown Chevrolet. Defendant objected to this testimony solely on the grounds that it was too speculative.
 
 
 31
 Defendant argues that Officer Mairorano's testimony concerning the reports of shots being fired from a brown Chevrolet was improperly admitted because the evidence was hearsay, was irrelevant, and was improperly admitted as evidence of other crimes, wrongs, or acts pursuant to Federal Rule of Evidence 404(b). In addition, defendant also asserts that the evidence should not have been admitted because it was more prejudicial than probative and because of the possibility that the testimony about shots being fired from a brown Chevrolet could lead the jury to infer that defendant had fired the shots.
 
 
 32
 Defendant has failed to preserve his right to challenge the testimony on any grounds other than relevancy, because he only objected to the admission of Officer Mairorano's testimony on that ground. At trial, defendant objected to the testimony about the brown Chevrolet on the grounds that the testimony was too speculative. Thus, the only issue preserved for review concerns the relevance of the testimony. See Federal Rule of Evidence 103(a)(1); United States v. Le Blanc, 612 F.2d 1012, 1016-17 (6th Cir.), cert. denied, 449 U.S. 849 (1980).
 
 
 33
 Officer Mairorano's testimony was irrelevant and its admission was error under Federal Rule of Evidence 401. However, even though the testimony was irrelevant, its admission was harmless beyond a reasonable doubt considering the record as a whole. See United States v. Cunningham, 804 F.2d 58 (6th Cir.1986), cert. denied, 481 U.S. 1037 (1987). In this case, there was no danger that the jury would confuse the testimony and conclude that defendant was involved in the drive-by shootings because it was never asserted by the government that defendant was in any way involved in the drive-by shootings. Moreover, defendant's cross-examination prevented the possibility of any confusion on the part of the jury. On cross-examination by defendant's counsel, Officer Mairorano admitted that although he was aware of information about a drive-by shooting involving a brown Chevrolet, he had no information about the year of the car, whether it was light or dark brown, no license plate number, and no information about the type of Chevrolet. Further, Officer Mairorano also testified that defendant's car was registered to him approximately two weeks after the police began receiving reports of drive-by shootings involving a brown Chevrolet. Therefore, when the evidence is considered as a whole, there was no possibility of confusion on the part of the jury, and the admission of Officer Mairorano's testimony was harmless error.
 
 III.
 
 34
 For the reasons stated, the district court's judgment of conviction is AFFIRMED.
 
 
 
 *
 Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Section 28.422 was amended effective March 28, 1991. Thus, a different result might occur if defendant were arrested after that date