**UNITED STATES of America, Plaintiff,**

v.

**Michael Wayne EATON, Defendant.**

**No. CR 93–22–M–CCL.**

United States District Court,
D. Montana,
Missoula Division.

Aug. 27, 1993.

See 31 F.3d 789.

Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff.

Julio K. Morales, Missoula, MT, for defendant.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

Before the court is Defendant's motion to dismiss. Having reviewed the parties' briefs, the court is now prepared to rule.

The government charges in a one count indictment that the defendant, a felon convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess and effect in commerce a firearm which had been transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

Defendant argues that he is not a convicted felon under any state law for purposes of 18 U.S.C. § 922(g)(1) because the State of Montana restores the civil rights of convicted felons under Mont.Code Ann. § 46–18–801. Defendant was at the time of the alleged federal firearms violation a citizen of the State of Montana.

### PREDICATE OFFENSE

In 1986 Defendant Eaton was convicted by the State of North Dakota of robbery, a felony punishable by imprisonment for a term exceeding one year. According to the government, the robbery occurred at a Stop–N–Go convenience store in South Fargo, North Dakota. Eaton and an accomplice entered the store wearing masks and armed with knives, hog-tied the clerk with a piece of rope, cut the telephone lines and fled with stolen cash, money orders, and checks. Before fleeing, Eaton took a wallet from the store clerk and told the clerk that if there was any trouble, he knew where the clerk lived and would come back and kill him. Eaton was sentenced to serve 24 months with 18 months suspended. Eaton's probation was transferred from North Dakota to Montana, and on December 11, 1987, Eaton was released from probation.

## FEDERAL FIREARMS OFFENSE

Eaton is now charged under federal law with having been in possession of a .44 caliber Ruger Redhawk revolver during late August or early September, 1992. Eaton allegedly purchased the firearm in Kalispell, Montana, and shortly thereafter took it to a pawnshop in Whitefish, Montana, in order to trade it for vacuum cleaners. The defendant's occupation at that time was vacuum salesman. The offense charged, 18 U.S.C. § 922(g)(1), provides that

> (g) It shall be unlawful for any person—
> > (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
>
> .   .   .   .   .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In order to determine whether defendant Eaton has been convicted for purposes of § 922(g)(1), the court must turn to the provisions of 18 U.S.C. § 921(a)(20):

> (20) ... What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction* which has been expunged, or set aside or *for which a person* has been pardoned or *has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such* pardon, expungement, or *restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*

(emphasis added).

## FEDERAL FIREARMS ANALYSIS

■ The issue is whether Montana state law or North Dakota state law controls defendant's civil rights restoration. A number of Ninth Circuit Court of Appeals panels and courts within other circuits have looked to the civil rights restoration law of the state of original conviction, also called the state of predicate offense. *See, e.g., United States v.*

*Dahms,* 938 F.2d 131, 133 (9th Cir.1991); *United States v. Gomez,* 911 F.2d 219, 220 (9th Cir.1990). *See also United States v. Decoteau,* 932 F.2d 1205 (7th Cir.1991); *United States v. Cassidy,* 899 F.2d 543, 546–46 (6th Cir.1990). *Cf. United States v. Geyler,* 932 F.2d 1330, 1335–36 (9th Cir.1991) (holding that defendant may look to state where federal conviction occurred for restoration of civil rights).

In *Dahms,* the Ninth Circuit Court of Appeals reviewed the case of a defendant who was charged with the same violation of 18 U.S.C. § 922(g)(1) as is defendant Eaton. In determining whether Dahms was a convicted felon under § 921(a)(20), the Ninth Circuit looked to civil rights restoration provisions of Michigan, the state of original conviction, not to the State of Montana, wherein the federal firearms offense took place. *Dahms,* 938 F.2d at 133–34.

Similarly, the Seventh Circuit Court of Appeals reviewed the case of another defendant charged with a violation of § 922(g)(1). The Seventh Circuit looked to the civil rights restoration provisions of North Dakota, the state of original conviction, not to the State of Illinois, wherein the federal firearms offense took place. *Decoteau,* 932 F.2d at 1208. The Sixth Circuit has expressed the supporting view that "[i]t was the unmistakable intent of Congress to eliminate the disabling effect of a felony conviction when *the state of conviction* has made certain determinations, embodied in state law, regarding a released felon's civil rights and firearms privileges." *United States v. Cassidy,* 899 F.2d 543, 546 (6th Cir.1990) (emphasis added).

On the other hand, the Ninth Circuit has also stated in dicta that the district court should look to the state of citizenship for civil rights restoration. *United States v. Geyler,* 932 F.2d 1330, 1334 (9th Cir.1991) (dicta) (quoting *United States v. Edwards,* 745 F.Supp. 1477, 1479 (D.Minn.1990) [hereinafter *Geyler I* ]. In *Geyler I,* the defendant's original felony conviction took place in a federal court in Arizona. Nine years later the defendant was charged with being a felon in possession of firearms in a federal court in Arizona. Defendant argued that upon com-

pleting his federal sentence, Arizona state law had restored his civil rights.

The government in *Geyler I* argued that § 921(a)(20) required the civil rights restoration to take place in the jurisdiction of the original proceedings, which in that case was federal court. The government argued further that because federal statutes provided no applicable civil rights restoration, the defendant could be found guilty of the federal firearms violation. The district court agreed and found the defendant guilty of possession of firearms in violation of 18 U.S.C. § 922(g)(1). The Ninth Circuit reversed, holding that, pursuant to 18 U.S.C. § 921(a)(20), Arizona's state civil rights restoration nullified the earlier federal conviction and invalidated the indictment for the federal firearms possession violation. *Geyler I*, 932 F.2d at 1335–36.

The *Geyler I* court did not, however, narrowly focus its holding on the defendant's civil rights as derived from his state of citizenship. Rather, the court focused broadly on the states' rights to restore civil rights as opposed to any federal restoration of civil rights. *Geyler I*, 932 F.2d at 1335. Thus the *Geyler I* holding may be construed narrowly that for a predicate offense conviction in federal court, it is state and not federal law that determines whether a defendant has had his civil rights restored for purposes of future firearms violations under 18 U.S.C. § 922(g)(1). The issue we face today was never before the *Geyler I* court.

Upon denial of the government's petition for rehearing, *United States v. Geyler*, 949 F.2d 280 (9th Cir.1991) [hereinafter *Geyler II* ], the court noted that a newly-posed government argument was irrelevant to the federal-state civil rights restoration issue. The government had argued that the court should consider the Bureau of Alcohol, Tobacco and Firearms' (ATF) interpretation of the statute. *See* Fed.Reg. 10,480 (1988). The ATF interprets the § 921(a)(20) civil rights restoration provision as specifically referring to the law of the state of original conviction. *Geyler II*, 949 F.2d at 282.

Although the *Geyler II* court found the ATF interpretation to be irrelevant to the facts of that case, the court noted that the "rule may have significant practical effect where state B purports to restore the rights of a felon convicted in state A but state A's laws ban any restoration of the right to possess weapons...." *Id.* at 283. The *Geyler II* court further recognized that "where a statute is silent or ambiguous on an issue, the courts should defer to a reasonable interpretation by the administering agency." *Id.* (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

Here, we have state B (Montana) purporting to restore the rights of a felon convicted in state A (North Dakota), but state A's (North Dakota) laws ban the restoration of the right to possess weapons for felons convicted in that state for a period of ten years. The applicable federal statute, § 921(a)(20), not silent or ambiguous as to whether federal or state law applies to civil rights restoration, is nevertheless silent and ambiguous as to which state's civil rights restoration law applies. And as the *Geyler II* court pointed out, this may be precisely the situation where deferral to agency interpretation is warranted. Having found no previous Ninth Circuit case in which a state of conviction having firearms prohibitions conflicts with a state of citizenship having civil rights restoration, the court turns next to the public policy underlying the statute.

Before 1986, federal law prohibited ex-felons from carrying a firearm or ammunition. *See generally*, David T. Hardy, "The Firearm Owners' Protection Act: A Historical and Legal Perspective," 17 Cumb.L.R. 585 (1987). States were not allowed to exempt their citizens from this law. *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 111–120, 103 S.Ct. 986, 991–96, 74 L.Ed.2d 845 (1983). In response to *Dickerson*, the Firearm Owners Protection Act, Pub.L. No. 99–308, 100 Stat. 449 (1986), was enacted to permit states to exempt, if they so chose, their convicted felons from firearms disabilities. *See United States v. Cassidy*, 899 F.2d 543, 546–49 (6th Cir.1990) (showing "FOPA's deference to state law with respect to the federal firearms privileges of persons *convicted in that state*") (emphasis added). One

of the purposes of the Firearm Owners Protection Act, therefore, was to empower the states vis-a-vis the federal government with regard to their own felons. *See United States v. Essick*, 935 F.2d 28, 31 (4th Cir. 1991). Under these circumstances, it would appear that to fulfill the original purpose of the Act the court must give North Dakota's firearms prohibitions full force and effect.

In this case, North Dakota law prohibits a person who has been convicted of a felony involving violence from owning a firearm or having one in his possession or under his control for a period of ten years from the date of conviction or release from incarceration or probation, whichever is the latter. N.D.Cent.Code § 62.1–02–01(1). Robbery under North Dakota law is a class B felony when a dangerous weapon is possessed during its commission. N.D.Cent.Code § 12.1–22–01.

■ Although North Dakota does have a civil rights restoration statute, N.D.Cent. Code § 12.1–33–01(1), Eaton's civil rights restoration is limited by North Dakota's ten year prohibition on possession of a firearm. N.D.Cent.Code § 62.1–02–01(1). Using the two-step analysis outlined in *Dahms*, the court finds that while Eaton's civil rights may have been substantially restored under North Dakota law, Eaton's civil rights were also specifically restricted by North Dakota law to the extent of not having the right to possess a firearm until December 11, 1997.

■ The court is mindful that the rule of lenity may be applicable here. When a federal criminal statute is ambiguous, it should be resolved in favor of leniency toward the defendant. *See Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132, 140 (1990). In this case, however, Ninth Circuit precedent strongly implies that the court should look to the state of original conviction, reasonable agency interpretation encourages the court to look to the state of original conviction, and the federal statute's underlying purpose is apparently furthered by looking to the civil rights restoration provisions of the state of original conviction. The rule of lenity cannot overcome the weight of these opposing factors.

Accordingly,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED.