**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Michael Wayne EATON, Defendant–Appellant.**

**No. 94–30001.**

United States Court of Appeals, Ninth Circuit.

Submitted July 12, 1994 *.

Decided July 26, 1994.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Julio K. Morales, Missoula, MT, for defendant-appellant.

Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff-appellee.

Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.

D.W. NELSON, Circuit Judge:

Michael Wayne Eaton appeals his conviction and sentence under 18 U.S.C. § 922(g)(1), which makes it unlawful for a felon convicted of a crime punishable by more than one year of imprisonment to "knowingly possess in or affecting commerce any firearm or ammunition." Eaton contends that he is not a felon within the meaning of 18 U.S.C. § 922(g)(1) because Montana restored his civil rights after he completed his North Dakota sentence. In the alternative, Eaton argues that his sentence is excessive and that he is entitled either to an additional reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(2) or to straight probation based on the exception for "single acts of aberrant behavior" under U.S.S.G., Ch. 1, Pt. A, intro., 4(d). We affirm.

## BACKGROUND

On April 10, 1986, Eaton was convicted of felony robbery in Cass County District Court, Fargo, North Dakota. He was sentenced to serve 24 months, with the last 18 months suspended. Eaton's probation subsequently was transferred from North Dako-

ta *to* Montana, and on December 11, 1987 he was released from probation.

In late August 1992, Eaton purchased a .44 caliber revolver from Robert Carter in Kalispell, Montana. He subsequently resold it to the Yankee Trader and Pawn Broker in Whitefish, Montana. A grand jury indicted Eaton for a violation of 18 U.S.C. § 922(g)(1) on June 17, 1993. The indictment alleged that Eaton, having been convicted of a crime punishable by imprisonment for a term exceeding one year, "did knowingly possess and effecting [sic] in commerce a firearm."

Eaton filed a motion to dismiss the indictment on the ground that his civil rights had been restored by operation of Montana law when he completed his North Dakota sentence, thus excluding him from the definition of "convicted felon" in § 921(a)(20). Montana has constitutional and statutory provisions that automatically restore all civil rights upon completion of supervision for any offense. Mont. Const., art. II, § 28 (1970); Mont.Code Ann. § 46–18–801(3). Eaton was a citizen of Montana at the time of the § 922(g)(1) violation.

North Dakota, however, does not restore the right to possess a firearm as quickly as Montana. Even if a felon's civil rights have been substantially restored under N.D.Cent. Code § 12.1–33–01(1), North Dakota law still prohibits a person who has been convicted of a felony involving violence from owning a firearm or from having one in his possession or under his control for ten years from the date of his release from incarceration or probation. N.D.Cent.Code § 62.1–02–01(1). Under N.D.Cent.Code § 12.1–22–01, robbery involving a dangerous weapon is a class B felony. Therefore, Eaton would not have regained the right to possess a firearm under North Dakota law until December 11, 1997, more than four years after the conduct at issue in this case.

On August 27, 1993, the district court denied Eaton's motion to dismiss, and a jury subsequently found Eaton guilty of violating § 922(g)(1), 859 F.Supp. 421. Eaton then filed objections to the presentence investigation report, including his claim that he is entitled to a downward departure to probation based on the "single act of aberrant behavior" exception. At sentencing the district court departed downward from the presentence report base offense level of 20 to a base offense level of 11, awarded Eaton a two-point reduction for acceptance of responsibility for a total offense level of 9, and then sentenced him to the maximum within that range: 12 months in prison followed by 3 years of supervised release. The court also ordered Eaton to reimburse the government for attorney's fees and costs in lieu of a fine.

Eaton filed a timely appeal from the denial of the motion to dismiss and from his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. Restoration of Civil Rights

#### A. Standard of Review

Whether to dismiss an indictment is an exercise of the district court's supervisory powers reviewed for abuse of discretion. *United States v. Garza–Juarez,* 992 F.2d 896, 905 (9th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994). We review questions of statutory interpretation *de novo. United States v. Valencia-Roldan,* 893 F.2d 1080, 1082 (9th Cir.), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990).

#### B. Analysis

Eaton argues that his civil rights were restored by operation of Montana law upon completion of his North Dakota sentence, and that, therefore, his prior offense no longer constitutes a "conviction" within the meaning of § 921(a)(20). Eaton relies on *United States v. Geyler,* 932 F.2d 1330 (9th Cir.1991) [hereinafter *Geyler I* ], *reh'g denied,* 949 F.2d 280 (9th Cir.1991) [hereinafter *Geyler II* ]. In *Geyler I,* we construed § 921(a)(20), which provides:

> What constitutes a conviction of such a crime [punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter ...

We reasoned in *Geyler I* that the reference in the first sentence to the law of the convicting jurisdiction ("choice-of-law clause") is unrelated to the clause in the second sentence regarding the restoration of civil rights ("exemption clause"). 932 F.2d at 1334. Accordingly, we concluded that a state's restoration of civil rights to an individual previously convicted of a felony in *federal* court could operate to exclude that felon from the class of persons subject to § 922(g)(1).[1]

The Supreme Court recently overturned *Geyler I* and held that felons convicted of possession of a firearm under § 922(g)(1) can take advantage of the exemptions in § 921(a)(20) only if their "civil rights have been restored under *federal* law (the law of the jurisdiction in which the earlier proceedings were held)." *Beecham v. United States,* —— U.S. ——, ——, 114 S.Ct. 1669, 1671, 128 L.Ed.2d 383 (1994) (emphasis added). In *Beecham,* the predicate felony was also a prior federal conviction rather than, as here, a prior state conviction in a different state. Although the Court did not specifically address how the federal courts should approach prior state law convictions under § 921(a)(20), the logic of *Beecham* compels the conclusion that the convicting *state* jurisdiction controls restoration of civil rights for purposes of the statute. The Court decided that the choice-of-law clause in § 921(a)(20) is logically read to apply to the exemption clause. *Id.* at ——, 114 S.Ct. at 1671. According to the Court's reasoning, "[a]sking whether a person has had civil rights restored is thus just one step in determining whether something should 'be considered a conviction.' By the terms of the choice-of-law clause, this determination is governed by the law of the convicting jurisdiction." *Id.*

Given the Supreme Court's conclusion that the choice-of-law clause and the exemption clause in § 921(a)(20) should be read together, we must reject Eaton's claim that Montana law can remove the disability of a North Dakota conviction. This result, moreover, is consistent with *United States v. Dahms,* 938 F.2d 131 (9th Cir.1991), and *Geyler II.* In *Dahms,* the defendant had been convicted of

a felony in Michigan and then prosecuted for possession of a firearm in Montana in violation of 18 U.S.C. § 922(g)(1). In dicta, the *Dahms* court suggested that where the predicate felony conviction is in state court, the convicting jurisdiction controls the question of civil rights restoration. *See* 938 F.2d at 133 ("The first sentence of § 921(a)(20) dictates that the law of the state in which the felon was initially convicted governs the applicability of § 922(g)(1).") (citing *United States v. Gomez,* 911 F.2d 219 (9th Cir.1990)). As Eaton points out, Dahms never raised the question of whether his civil rights had been restored under Montana law. The government correctly counters, however, that the case reveals the Ninth Circuit's intention to look to the convicting state's civil rights restoration procedures to determine the applicability of federal firearms laws.

Upon denial of the government's petition for rehearing in *Geyler II,* this court also indicated in dicta that it would be inclined to a different result if the convicting jurisdiction were a state court: "[A] rule [specifically referring to the law of the convicting jurisdiction as controlling rights restoration] may have significant practical effect where state B purports to restore the rights of a felon convicted in state A but state A's laws ban any restoration of the right to possess weapons. . . ." 949 F.2d at 283. The implied rule in both *Dahms* and *Geyler II* is consistent with extending the Supreme Court's reading of § 921(a)(20) to rights restoration following a predicate offense conviction in *state* court.

Accordingly, we hold that the district court properly denied Eaton's motion to dismiss. For purposes of § 921(a)(20), only the convicting state jurisdiction can restore civil rights to a convicted felon and remove the disability of a predicate state offense.

## II. Application of the Sentencing Guidelines

### A. Standard of Review

The district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal. *United States v. Morales,* 898 F.2d 99, 103 (9th Cir.1990). Moreover, the extent to which a district court chooses to exercise its discretion to depart downward cannot be reviewed by this court. *United States v. Vizcarra-*

---

1. The Eighth Circuit adopted the Ninth Circuit's construction of § 921(a)(20) in *United States v. Edwards,* 946 F.2d 1347, 1350 (8th Cir.1991) ("[W]e decline to adopt a construction that varies from the plain language of the statute in order to expand the reach of the statute's prohibition.").

*Angulo*, 904 F.2d 22, 23 (9th Cir.1990). If the district court rests its decision not to depart downward on a determination that it does not have the authority to do so, we treat that decision as an interpretation of the Sentencing Guidelines and review it *de novo*. *United States v. Morales*, 972 F.2d 1007, 1011 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993). If, however, the court indicates that it would not depart even if it could, the sentence is not reviewable on appeal. *United States v. Brown*, 985 F.2d 478, 480–481 (9th Cir.1993); *United States v. Belden*, 957 F.2d 671, 676 (9th Cir.), *cert. denied*, —— ·U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992).

**B. Analysis**

■ We lack jurisdiction to consider either Eaton's argument that he is eligible for an additional downward departure for acceptance of responsibility under § 3E1.1(b)(1), or his objection that the imposition of attorney's fees is an excessive fine. *Morales*, 898 F.2d at 103. The district court exercised its discretion in imposing fees in lieu of the fine recommended in the Guidelines. The dollar amount of the penalty, moreover, is well with the Guideline range for a base offense level of 9.[2]

■ Eaton further claims that the district court erred by failing to determine whether his actions constitute "aberrant behavior" which would warrant a downward departure to probation. *See* U.S.S.G. Ch. 1, Pt. A., intro., 4(d). The Sentencing Guidelines allow for a downward departure in the atypical case where a guideline literally applies but where the defendant's conduct significantly differs from the norm or the "heartland" of cases. *See* U.S.S.G. Ch. 1, Pt. A, intro. 4(b); *United States v. Russell*, 870 F.2d 18, 20 (1st Cir.1989). Eaton contends that his conviction under § 922(g)(1), because it is a status offense, should be considered together with the prior felony conviction as a "single act of aberrant behavior." The district court did not expressly address this claim at sentencing.

Under *United States v. Dickey*, 924 F.2d 836, 839 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991), we "must remand" if we "are unable to determine from the record whether the district court's ruling was an exercise of its discretion or a legal ruling." After reviewing the record in this case, we conclude that there is sufficient evidence that the district court exercised its discretion.

In response to Eaton's objections at the sentencing proceedings, the district court stated: "[T]o the extent that the objections are not dealt with by the probation officer they are not well taken by the court and are therefore denied." R.T. 12/10/93 at 27. Regarding Eaton's criminal history, the court remarked: "[T]his defendant now has two felony convictions, he has a conviction for sexual assault and in addition to that, three convictions either for contempt of court or for violation of restraining orders. And although he has either mitigating comments or an excuse for each of these crimes, I think it's time that he should realize that maybe he's doing something wrong here." R.T. 12/10/93 at 42. The district court added that "the court has carefully considered this in advance of the hearing and has read the comments that have been made today, and I do find mitigating circumstances that would warrant the court to depart downward." R.T. 12/10/93 at 42. While it would have been preferable for the district court to state which objections were not "well taken" and which led it to depart downward, these remarks indicate a discretionary refusal to depart to straight probation, and they are sufficient to support the sentence.

We have held that a court's failure to depart without any comment on its authority to do so does not automatically convert a discretionary departure into a sentence imposed in violation of law. *United States v. Garcia–Garcia*, 927 F.2d 489, 491 (9th Cir. 1991). In *United States v. Reyes–Alvarado*, 963 F.2d 1184 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992), although the district court had not expressly indicated that it was exercising its discretion to reject a downward departure based on overstatement of the defendant's criminal history under the Guidelines, the record contained remarks that suggested the judge "thought appellant deserved the sentence he got based on his criminal history." *Id.* at 1190. At sentencing, the district court in *Reyes–Alvarado* remarked: "The facts are

---

**2.** From the initial appearance through the disposition in the district court, the costs totalled $3,544.80. According *to* U.S.S.G. § 5E1.2(c)(3), the recommended fine for an offense level of 9 is from $1–10,000.

terrible for you ... [t]he gentleman has about eight prior convictions ... and I can't rewrite his biography." *Id.* The Ninth Circuit held that these remarks were sufficient evidence of a discretionary decision. The court's remarks here provide a comparably clear indication that the judge was exercising his discretion. *But cf. United States v. Brown,* 985 F.2d 478, 480 (9th Cir.1993) (finding district court's response, "you say 'overrepresentation' when he's got a rap sheet as long as my arm," insufficient to show that court's refusal to depart was discretionary where court repeatedly declared that none of the grounds defendant had suggested for departure were permissible under the Guidelines).

■ Finally, we note that reversal is not necessary where the district court errs in construing its authority but indicates that it would not have departed downward even if it were not constrained. *United States v. Belden,* 957 F.2d 671, 676 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992) (declining to review a decision where the district court stated at the sentencing hearing that he was "not inclined to depart"); *United States v. Williams,* 898 F.2d 1400, 1403 (9th Cir.1990) (where a judge stated "I do not find that I have the authority [to depart] in this case, nor do I find facts which would lead me to believe I should depart," the sentence was not reviewable on appeal). Given that the district court responded to Eaton's objections with remarks which clearly indicate that it did not wish to depart further, we affirm the sentence.

AFFIRMED.