RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0255a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

     *v.*

          No. 07-2574

ROBERT GEORGE SHAFER,

          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00141-02—Robert J. Jonker, District Judge.

Argued: December 2, 2008

Decided and Filed: July 21, 2009

Before: MOORE and WHITE, Circuit Judges; TARNOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Richard E. Zambon, MITCHELL & ZAMBON, Grand Rapids, Michigan, for Appellant. Donald A. Davis, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Richard E. Zambon, MITCHELL & ZAMBON, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

    MOORE, J., delivered the opinion of the court, in which WHITE and TARNOW, JJ., joined. TARNOW, D. J. (p. 17), delivered a separate concurring opinion.

_____

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**AMENDED OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Defendant-Appellant Robert Shafer ("Shafer") appeals his sentence of 360 months of imprisonment resulting from his guilty plea to one count of enticing a minor to engage in sexually explicit conduct for the purposes of producing visual depictions of such conduct and which were produced using material which had been shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. § 2251(a).  Specifically, Shafer admitted to "caus[ing] an eleven-year-old boy to undress and engage in sexually explicit conduct, including, but not limited to, masturbation and the lascivious exhibition of his genitals and pubic area. [Shafer] produced seven (7) digital images of the sexually explicit conduct using materials which had been shipped and transported in interstate and foreign commerce, including, but not limited to, a Sony Mavica brand digital camera that was manufactured outside of the State of Michigan."  Joint Appendix ("J.A.") at 14-15 (Indictment at 1-2). Shafer's sole argument on appeal is that the district court clearly erred at sentencing when it imposed a two-level enhancement pursuant to the U. S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2G2.1(b)(2)(A) (2006).  After we issued an opinion in this case, the Government presented in a petition for rehearing and rehearing en banc a new argument that we did not have occasion to consider in our initial review.  In light of this new argument, we provided Shafer an opportunity to respond to the Government's position, and we conducted further research regarding the legislative purpose behind the statute at issue in this case as expressed in the statute's legislative history.  Having thoroughly reviewed these additional materials, we now **AFFIRM** Shafer's sentence. We withdraw our prior opinion and issue this amended opinion.

## I.  FACTS AND PROCEDURE

The facts of this case are not in dispute.  Shafer and codefendant Kurt Amundson ("Amundson") operated a licensed foster-care home in Michigan.  On June 20, 2006, the Van Buren County, Michigan, Sheriff's Department received information from C.J., a minor boy in Shafer's and Amundson's care, and C.J.'s father, that pertained to child pornography and other illegal conduct involving Shafer and Amundson.  C.J. stated that, while he was under Shafer's and Amundson's care, he and other boys would join Shafer and Amundson in the hot tub at the residence.  On one occasion, C.J. saw Amundson and Shafer in the hot tub with J.G., another minor ward of Amundson and Shafer, and B.H.,[1] a minor boy; everyone in the hot tub was naked.  C.J. also reported finding pornographic pictures on Shafer's and Amundson's computers, but denied having any inappropriate contact with either Shafer or Amundson.

On June 29, 2006, law-enforcement officials executed a search warrant on Shafer's and Amundson's home, seizing various computers, floppy disks, DVDs, CDs, videotapes, and an external hard drive.  Shafer was the primary user of one computer, which contained 144 images of suspected child pornography dating from November 2003, to April 5, 2006.  In total, the search uncovered "20 images of child pornography production; 25,086 images of child pornography; and 1,244 child pornographic videos." J.A. at 194 (Presentence Investigation Report ("PSR") at 9 ¶ 35).

Of the images discovered, several included images of B.H. either naked or exposing his genitals or buttocks.  One picture, taken when B.H. was eleven years old, depicted B.H. masturbating.  B.H. was thirteen years old at the time these photos were discovered.

On June 6, 2007, a grand jury returned a six-count indictment charging Shafer and Amundson with sexually exploiting children.  Law-enforcement officials arrested Shafer and Amundson on June 7, 2007.  Pursuant to a proffer agreement, the FBI

---

[1]B.H.'s mother, a friend of Shafer, had asked Shafer and Amundson to "act as a 'Big Brother'" to B.H.  J.A. at 198 (Presentence Investigation Report ("PSR") at 13 ¶ 62).  There is no evidence that B.H. was a ward of Shafer or Amundson.

interviewed Shafer on July 18, 2007.  At that time, "Shafer admitted molesting B.H. since he was approximately 8 years old." J.A. at 195 (PSR at 10 ¶ 47).  Shafer believed this molestation occurred "once every two weeks over a five or six year period."  *Id.* Shafer further detailed specific instances in which he and Amundson molested B.H. Shafer also admitted to sexually assaulting other children, but denied ever having sexual intercourse with J.G.[2]

On July 25, 2007, Shafer pleaded guilty to count one of the indictment, enticing a minor to engage in sexually explicit conduct for the purposes of producing visual depictions of such conduct and which were produced using material which had been shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. § 2251(a), and consented to the forfeiture allegation under 18 U.S.C. §§ 2253(a)(1) and (a)(3) expressed in count six.  Count one specifically stated that Shafer "caused an eleven-year-old boy to undress and engage in sexually explicit conduct, including, but not limited to, masturbation and the lascivious exhibition of his genitals and pubic area" and produced seven "digital images of the sexually explicit conduct using materials which had been shipped and transported in interstate and foreign commerce." J.A. at 14-15 (Indictment at 1-2).

A PSR was ordered and provided to Shafer prior to sentencing.  The PSR calculated Shafer's base offense level as 32 and imposed multiple enhancements.  Shafer raised several objections to the PSR in a sentencing memorandum.  Most important for purposes of this appeal, Shafer objected to a two-level enhancement awarded pursuant to § 2G2.1(b)(2)(A), which applies when "the offense involved . . . the commission of a sexual act or sexual contact."  U.S.S.G. § 2G2.1(b)(2)(A).  Shafer argued that both the term "sexual act" and the term "sexual contact" require one individual to touch another individual and thus do not encompass self-masturbation.

---

[2]Contrary to Shafer's assertion, J.G. claimed that Shafer and Amundson "'licked [J.G.'s] penis and made [J.G.] lick theirs; and made [J.G.] put [J.G.'s] privates in their butts.'" J.A. at 198 (PSR at 13 ¶ 61). J.G. further alleged that Shafer and Amundson "'put their privates in [J.G.'s] butt, and even though it hurt. . . . (pause) they held [J.G.] down, and that's when they hurt [J.G.'s] arm.'" *Id.* (ellipsis and (pause) alterations in PSR).  No charges were filed against Shafer relating to this accusation.

The district court responded to Shafer's objections at Shafer's sentencing hearing on December 10, 2007. During argument regarding the § 2G2.1(b)(2)(A) enhancement, Shafer conceded that there was evidence "that he personally had direct physical contact with BH of a sexual nature but not with respect to the offense of conviction." J.A. at 120 (Sent. Hr'g Tr. at 24). The district judge overruled Shafer's objection to the § 2G2.1(b)(2)(A) enhancement, finding two grounds to support imposing the enhancement.

First, the district judge found that, although "sexual act," as defined by 18 U.S.C. § 2246(2), requires one individual to make contact with another individual, the plain language of 18 U.S.C. § 2246(3) defining "sexual contact" is broader, covering self-masturbation when done with the intent to arouse or gratify the sexual desire of either the person masturbating or a person watching. Specifically, the district judge stressed that § 2246(3) defined "sexual contact" to include "the intentional touching . . . of the genitalia . . . of any person" and that "a person masturbating is caught touching the genitalia of any person, namely, his or her own." J.A. at 125 (Sent. Hr'g Tr. at 29). The district judge further found that a person can masturbate "with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," as required by § 2246(3), "and the desire of any person could include the [desire of the] person masturbating, or in this case could include the [desire of the] people filming [the masturbation], namely, [Shafer]." *Id.*

Second, the district judge found that, for purposes of this case, § 2G2.1(b)(2)(A) is not limited to

> the specific offense of conviction. Rather, I think, to say that the offense, not the offense of conviction, involved the commission of a sexual act or sexual contact implies more and suggests that the entire pattern of conduct involving at least a particular minor victim, such as BH in this case, ranging from earliest evidence of that at age 8 to the offense of conviction at age 11, is all part and parcel of the offense.

J.A. at 126 (Sent. Hr'g Tr. at 30). The district judge elaborated that "grooming conduct was an admitted part of what was going on here. This was not sex by force; it was sex by trust. And that involves ongoing acts and ongoing contact." *Id.* The district judge

concluded that "anything related to that particular minor victim in the house of the co-defendants as part of their overall relationship is fair consideration for application of that guideline under 2G2.1[(b)](2)(A), and so that's an alterative basis, and the Court is holding that the enhancement would apply." *Id.*

After ruling on all of Shafer's objections, some of which were sustained and are not at issue in this appeal, and awarding a one-level reduction pursuant to the Government's motion for departure, the district court recalculated Shafer's offense level to be 41, with a criminal history category of I. The applicable guidelines range is 324 to 405 months; however, due to the 360-month statutory maximum for the offense to which Shafer pleaded, Shafer's guidelines range was set at 324 to 360 months. The district court sentenced Shafer to 360 months of imprisonment. Shafer timely appealed.

## II. ANALYSIS

Shafer contends that the district court erred when it imposed the two-level enhancement pursuant to § 2G2.1(b)(2)(A) because he asserts that: (1) "sexual contact" does not include self-masturbation and (2) Shafer did not commit any "sexual contact" that can be considered "relevant conduct" for purposes of the enhancement. We disagree with Shafer's first assertion, and we conclude that the self-masturbation at issue in the instant case constitutes "sexual contact" sufficient to support the district court's imposition of an enhancement under § 2G2.1(b)(2)(A). We therefore need not and do not reach the district court's alternative "relevant conduct" justification for the enhancement.

### A. Standard of Review

We review the sentencing court's interpretation of the guidelines de novo and the district court's factual findings for clear error. *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir. 2002) (citing *United States v. Swiney*, 203 F.3d 397, 401 (6th Cir.), *cert. denied*, 530 U.S. 1238, 1268 (2000)). "'A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself.'" *United States v. Dedman*, 527 F.3d 577, 584-85 (6th Cir.

2008) (quoting *United States v. Caldwell*, 49 F.3d 251, 251 (6th Cir. 1995)) (second set of internal quotation marks omitted).  "Absent a clearly expressed legislative intention to the contrary, th[e statutory] language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

**B.  Self-Masturbation and the Scope of "Sexual Contact" under 18 U.S.C. § 2246(3)**

Shafer contends that the term "sexual contact" does not include self-masturbation.  Neither party provided the court with any caselaw addressing whether self-masturbation is covered by 18 U.S.C. § 2246(3)'s definition of "sexual contact." We also were unable to locate such a case in any circuit.  Thus, this issue of statutory interpretation appears to be a question of first impression.

Section 2G2.1(b)(2)(A) of the Sentencing Guidelines states that "[i]f the offense involved . . . the commission of a sexual act or sexual contact, increase [the base offense level] by 2 levels."  U.S.S.G. § 2G2.1(b)(2)(A).  "Sexual act" and "sexual contact" are defined in 18 U.S.C. §§ 2246(2) and (3), respectively.  U.S.S.G. § 2G2.1(b)(2)(A) applic. n.2.  "Sexual act" is defined, in pertinent part, as "the intentional touching, not through the clothing, of the genitalia *of another person* who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(2)(D) (emphasis added).  Section 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of *any person* with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3) (emphasis added).[3]

The Government argues that, although the statutory term "sexual act" does not include self-masturbation because it does not involve the touching of another, the statutory term "sexual contact" is a broader term that encompasses the sexual touching

---

[3]Section 2G2.1(b)(2)(A) also requires that the offense "involved" a "sexual act" or "sexual contact."  In the instant case, it is obvious that the offense "involved" the act of self-masturbation, and Shafer does not argue otherwise.  Thus, we need not and do not decide the parameters of the term "involved" as used in § 2G2.1(b)(2)(A).

of oneself. This argument has merit. Section 2246(3) clearly states that "sexual contact" involves certain intentional touching of "any person." "Any person" includes a person touching himself or herself. *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 53 (10th ed. 1995) (defining "any" as "EVERY—used to indicate one selected without restriction"). This argument is strengthened by the fact that the definition of "sexual act" requires the touching "of another person." § 2246(2)(D). "Another person" clearly requires at least two individuals to be involved in the act. Thus, because Congress chose to use different language when defining "sexual contact," it seems clear that Congress intended not to limit "sexual contact" in the same way it limited "sexual act."

In his initial briefing before us, Shafer asserted that, because Congress failed to "specifically include self-masturbation in the definition of 'sexual contact,'" we should not "invade the role of Congress and define statutory terms," and contended that we should hold that "sexual contact," like "sexual act," requires one person to touch another person. Shafer Br. at 14. However, nothing in § 2246(3) supports a holding that more than one person must be involved for "sexual contact" to occur. Simply because the statute does not specifically state that self-masturbation qualifies as "sexual contact" does not mean that Congress intended for such an activity to be excluded, especially when self-masturbation falls squarely within the language of § 2246(3).

Furthermore, the legislative history of § 2246(3) does not evidence "a clearly expressed legislative intention to the contrary." *Consumer Prod.*, 447 U.S. at 108. Rather, according to the Report of the House Committee on the Judiciary, the Sexual Abuse Act of 1986 ("the Act"), of which § 2246(3) is a part, was drafted with the intention of "reach[ing] all forms of sexual abuse of another." H.R. Rep. No. 99-594, at 11 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 6186, 6191. The activity at issue in this case—the coerced self-masturbation by a minor child—is a form of sexual abuse of another. Moreover, the Act was "drafted broadly to cover the widest possible variety of sexual abuse," *id*. at 12, further solidifying our belief that self-masturbation is

encompassed by the term "sexual contact."[4]  Therefore, we hold that "sexual contact," as defined by § 2246(3), includes self-masturbation, as long as the other requirements of the statute are satisfied.[5]

## C.  The Intent Element of 18 U.S.C. § 2246(3)

The statutory requirements for "sexual contact" also include two intent elements. The first, which is not at issue in the instant appeal, is the requirement that there was "the intentional touching . . . of the genitalia" of B.H. by B.H.  18 U.S.C. § 2246(3). There is no debate here regarding whether B.H. intentionally touched his own genitalia, and thus the first intent requirement is satisfied.[6]  The question before us is the second intent requirement of § 2246(3), i.e., that there be "touching . . . of the genitalia . . . of [B.H.] *with an intent to* abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  § 2246(3) (emphasis added) (hereinafter referred to as "the intent clause").  In regards to this latter question, the Government has raised an argument in its petition for rehearing that it did not raise before the panel during our initial

---

[4]Shafer makes much of the case of *United States v. Starr*, 486 F. Supp. 2d 940 (N.D. Iowa 2007). However, *Starr* considered only whether the definition of "sexual act" covers self-masturbation, finding that self-masturbation was not a "sexual act" because Congress's use of the phrase "of another" in the definition of "sexual act" limited the conduct that could be considered a "sexual act" to conduct that involved "some physical contact between the defendant and another person." *Id.* at 947. As Shafer admits, *Starr* did not address the definition of "sexual contact." Shafer Br. at 14. Shafer does not explain why *Starr* is relevant, and we could not find any language in that case that would be helpful in resolving the instant appeal.

[5]This is the same conclusion that we reached in our first opinion. Although the vast majority of Shafer's original briefing before us contended that self-masturbation was not encompassed by the term "sexual contact," Shafer did not dispute our earlier determination in his response to the Government's petition for rehearing, nor did Shafer file his own petition for rehearing. Thus, for purposes of the instant opinion, this conclusion now does not appear to be disputed.

[6]Moreover, because the term "intentional touching" is not at issue in the instant case, the Government's reliance on *United States v. Sagg*, 125 F.3d 1294 (9th Cir. 1997), in its petition for rehearing is misplaced. In *Sagg*, the defendant entered the bedroom of his sleeping ten-year-old stepdaughter, wrapped her hand around his penis, and ejaculated, all while the child remained asleep. *Id.* at 1295. The defendant was charged with Abusive Sexual Contact under 18 U.S.C. § 2244(a)(1), which criminalizes, among other things, causing an individual to engage in "sexual contact" as defined by § 2246(3) under certain circumstances. 18 U.S.C. § 2244. The defendant argued that no "sexual contact" occurred because his stepdaughter was unconscious when her hand touched his penis and thus the touching could not be intentional. *Sagg*, 125 F.3d at 1295. The Government countered "that the 'intentional' touching required by the statute referred to the defendant's mental state," not the victim's. *Id.* The Ninth Circuit, focusing solely on the issue of whether the touching was intentional, agreed with the Government, and held that "[t]he defendant intentionally caused his sleeping stepdaughter to touch his genitalia, and he did so with the intent to gratify his sexual desire." *Id.* at 1296. *Sagg* did not address the further intent element of § 2246(3) discussed below, and thus *Sagg* does not aid in our resolution of that issue.

consideration. Thus, before we can decide the intent-clause issue, we must first determine whether this issue is properly before us on petition for rehearing.

### 1. Scope of Petition for Rehearing

In their initial briefings before us, neither party addressed the intent clause with any amount of specificity. Indeed, the Government's only mention of the intent clause suggested that it believed, as did the panel originally, that the intent clause referred to the intent of the toucher, in this case B.H.:

> In the context of this case, the term "sexual contact" includes the intentional touching of B.H.'s genitalia *by B.H., with an intent to* arouse or gratify the sexual desire of any person. The sexual desires could be B.H.'s or, to the extent that they were aroused by watching, the sexual desires could be Defendant Shafer and Defendant Amundson's.

Gov't Br. at 17 (emphasis added). At oral argument, the panel extensively questioned the Government on the intent clause. The Government initially asserted that the intent clause referred to B.H.'s intent and that the requisite intent could be gleaned from the fact that B.H. was self-masturbating. The Government then briefly contended that, although the statute requires that the person doing the touching perform that act intentionally, the intent clause of the statute refers to the defendant's intent. Upon further questioning, however, the Government quickly abandoned this argument in favor of its earlier position—that B.H.'s intent was the pertinent inquiry and that such intent could be inferred from the act of self-masturbation. Even though the parties had not briefed the issue of the intent clause and the panel made abundantly clear during oral argument that intent was an important issue in this case, neither party sought to submit subsequent letter briefs. Furthermore, the Government made no real attempt to dissuade the panel from an interpretation of the intent clause requiring a court to look at the intent of the individual doing the touching to determine if "sexual contact" occurred, and this was the reading of the intent clause that we adopted in our initial opinion. Applying that reading of the statute, we concluded that there was no evidence that B.H. self-masturbated with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of himself or any onlooker. We vacated Shafer's sentence and remanded,

noting that "our holding does not preclude the district court from making the necessary finding of intent on remand." *United States v. Shafer*, 557 F.3d 440, 446 (6th Cir. 2009).

Having lost on this issue, the Government, in its petition for rehearing, asserts for the first time that our approach to the intent clause is flawed when read in light of the legislative history surrounding the Act, and that the intent clause of § 2246(3) refers to the defendant's intent, regardless of whether the victim or the defendant is the person doing the touching of the genitalia.[7] Shafer counters that our initial interpretation of the intent clause, requiring that the person who is doing the touching, in this case B.H., must have the specific intent to "abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," is proper.

We typically do not consider arguments raised for the first time in a petition for rehearing. *Costo v. United States*, 922 F.2d 302, 302-03 (6th Cir. 1990) ("Generally, an argument not raised in an appellate brief or at oral argument may not be raised for the first time in a petition for rehearing."); *Gen. Accident Fire & Life Assurance Corp. v. Smith & Oby Co.*, 274 F.2d 819, 819 (6th Cir. 1960) (noting that, on rehearing, a panel may disregard a theory of counsel that "was not discussed in the original brief"); *see also Easley v. Reuss*, 532 F.3d 592, 593-94 (7th Cir. 2008) ("Panel rehearing is not a vehicle for presenting new arguments, and, absent extraordinary circumstances, we shall not entertain arguments raised for the first time in a petition for rehearing."). This rule reflects the dictate of Federal Rule of Appellate Procedure 40(a)(2), which requires that

---

[7]For two reasons we find ironic the Government's complaint in its petition for rehearing that, "[w]ithout the benefit of briefing from the parties, the panel, *sua sponte*, raised the issue of intent and found that the 'plain language' of § 2246(3) requires that" the toucher possess the requisite intent. Gov't Pet. for Reh'g at 8-9. First, it was the Government that forcefully argued in its original brief that the plain reading of § 2246(3) encompassed self-masturbation and that § 2246(3) "said what it meant and meant what it said." Gov't Br. at 17. The Government did not abandon its plain-meaning argument until it realized that the natural consequence of that position would be unfavorable to the Government in this case. The Government's attempt to chastise the panel now for agreeing with the Government's earlier position is disingenuous.

Second, and more important, it is the Government's burden to show, by a preponderance of the evidence, that all of the elements of § 2G2.1(b)(2)(A), including both of the intent elements of § 2246(3), are present in order to support the imposition of the enhancement at sentencing. *See United States v. Feinman*, 930 F.2d 495, 500 (6th Cir. 1991) ("In cases where the applicability of an enhancement provision is contested, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence."); *see also United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (stating that it is the Government's burden to prove the elements of an enhancement). Thus, the Government dropped the ball in this case by failing in its initial brief to articulate an interpretation of the intent clause that accounted for the facts of this case.

a party's petition for rehearing "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and . . . argue in support of the petition." Fed. R. App. P. 40(a)(2). As the Seventh Circuit explained, "[i]t goes without saying that the panel cannot have 'overlooked or misapprehended' an issue that was not presented to it." *Easley*, 532 F.3d at 593. Thus, Rule 40(a)(2) prevents us from considering arguments raised for the first time in a petition for rehearing under most circumstances.

This rule is not, however, absolute. As the *Easley* panel noted, a panel may choose to entertain a new argument on rehearing if "extraordinary circumstances" are present. *Id.* at 594; *accord United States v. Patzer*, 284 F.3d 1043, 1045 (9th Cir. 2002) ("A case must involve extraordinary circumstances [to] justify our considering on petition for rehearing[] issues which were not previously presented." (internal quotation marks omitted) (first alteration in original)). We find that this case presents such circumstances.

The Ninth Circuit's opinion in *Escobar Ruiz v. INS*, 813 F.2d 283 (9th Cir. 1987), is instructive. In *Escobar Ruiz*, the panel initially held that "the former Equal Access to Justice Act (EAJA), codified at 5 U.S.C. § 504 (1982) and 28 U.S.C. § 2412 (1982), applie[d] to immigration proceedings before the immigration judge and the Board of Immigration Appeals (BIA)." *Id.* at 284. For the first time in its petition for rehearing, "the government claim[ed] that deportation proceedings are not adversary adjudications within the meaning of 5 U.S.C. § 504 of the EAJA," and referred the panel to a subsection of § 504 that supported such an argument. *Id.* at 285. The panel noted that it "ordinarily [would] not consider for the first time on rehearing issues not presented by the parties in their briefs on appeal," but that this case met the "extraordinary circumstances" exception to that rule:

> Our initial decision that Escobar Ruiz may be entitled to attorney's fees is the first by any court to consider the question whether the EAJA applies to immigration proceedings, and it is likely that numerous claims will be made in reliance on the opinion we issued. The new legal issue raised by the government goes to the heart of our decision. If the government's argument regarding the term "adversary adjudication" in

section 504 is correct, then the EAJA does not apply to immigration proceedings and all attorney's fees claims arising out of such proceedings should be dismissed. Under these circumstances, permitting an improper interpretation of the EAJA to stand as the controlling precedent in our circuit would constitute a disservice to all parties concerned.

*Id*. at 285-86. The panel further noted that it was "convinced that the government's failure to present the issue at the proper time was inadvertent or negligent rather than willful," and that, "[a]ll in all, . . . [it] ha[d] before [it] one of those special situations [in which] a belatedly raised issue may be considered." *Id*. at 286 (internal quotation marks omitted) (sixth alteration in original).

The circumstances of *Escobar Ruiz* are identical to the circumstances of the instant case. Specifically, as noted above, we are the first panel to interpret § 2246(3) in regard to self-masturbation. Thus, our decision in this case will likely act as a guide to other panels across the country that are presented with this issue in the future. Moreover, our decision is binding precedent in this circuit. *See Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (holding that "[a] panel of this Court cannot overrule the [published] decision of another panel" (internal quotation marks omitted) (first alteration in original)). As in *Escobar Ruiz*, the Government's new argument goes to the heart of our initial holding and, if we were incorrect in that holding, allowing that holding to stand "would constitute a disservice to all parties concerned." *Escobar Ruiz*, 813 F.2d at 286. Additionally, we do not believe that the Government's failure to raise this argument previously was at all willful; rather, we believe that the Government's error was likely due to oversight or negligence. Therefore, we conclude that this case presents "extraordinary circumstances" sufficient to allow us to consider the Government's new argument.

### 2.  The Intent Clause

As demonstrated by our initial opinion, when reading the language of § 2246(3) in isolation, one can make a logical argument that the intent clause refers to the intent of the individual doing the touching.[8]  However, the Government's new contention as to the proper interpretation of the intent clause—that the clause refers only to the intent of the defendant, regardless of whether the victim or the defendant does the actual touching—finds substantial support in the legislative history of § 2246(3).  According to the Report of the House Committee on the Judiciary, the purpose of the Act was "to modernize and reform Federal rape statutes."  H.R. Rep. No. 99-594, at 6 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 6186, 6186 ("House Report").  The House Report noted that, to accomplish this purpose, the Act "defin[es] the offenses so that the focus of a trial is upon the conduct of the defendant, *instead of* upon the conduct *or state of mind of the victim*."  *Id*. at 10 (emphases added).  Moreover, the House Report stresses that "each offense set forth in [the Act] describes . . . the state of mind that the *defendant* must have had."  *Id*. at 13 (emphasis added).  Thus, the legislative purpose was to make the victim's intent irrelevant to any prosecution for sex crimes under the Act.

In a prototypal sex-crime case, the natural reading of the intent clause would not conflict with this underlying purpose because typically it is the defendant who is engaged in the prohibited touching, rather than the victim.  This is likely the scenario that Congress had in mind when it drafted § 2246(3).  However, as this case illustrates, prohibited sexual contact under § 2246(3) includes instances where the defendant does not actually touch the victim, but rather causes the victim to touch himself or herself in a sexual manner.  In such cases, which appear to be rare,[9] the natural reading of the intent clause runs contrary to the purpose of the statute because interpreting the intent clause to require inquiry into the intent of the toucher would involve a court delving into

---

[8] As used in this opinion, the intent clause refers to the following language:  "touching . . . of the genitalia . . . of any person *with an intent to* abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  § 2246(3) (emphasis added).

[9] As we explained above, the issue of whether "sexual contact" includes self-masturbation is an issue of first impression in any circuit.  The dearth of cases on this issue strongly suggests that causing self-masturbation by a victim is not a common occurrence in the realm of federal sex crimes.

the "state of mind of the victim." H.R. Rep. No. 99-594, at 10. This would conflict with Congress's clear expression of purpose in the House Report that the defendant's intent, not the victim's intent, is the critical factor.

Under these circumstances, where the text of a statute conflicts with the statute's clear purpose, the natural reading of the statute is properly informed by the underlying purpose and the overall framework of the Act. *Bob Jones University v. United States*, 461 U.S. 574, 586 (1983); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982) (noting that, "in rare cases [where] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, [the drafters'] intentions must be controlling"); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 244 (1989) (same). In light of the statements regarding intent contained in the House Report, we must conclude that the legislative history of § 2246(3) and the Act as a whole make clear that the intent of the victim is not a valid inquiry for the court. Instead, the intent of the criminal defendant is determinative in deciding whether "sexual contact" as defined in § 2246(3) has occurred. Thus, to comply with Congress's purpose in a case such as this one, where the conduct in question involves the defendant causing self-masturbation by the victim, we hold that the court should look to the intent of the defendant involved, not the intent of the victim.

In this case, Shafer pleaded guilty to enticing a minor to engage in sexually explicit conduct for the purposes of producing visual depictions of such conduct. The sexually explicit conduct in question is the self-masturbation of B.H. Applying the proper interpretation of the intent clause, to uphold the district court's imposition of the § 2G2.1(b)(2)(A) enhancement, we must conclude that Shafer caused B.H. to self-masturbate with the intent of Shafer being to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of some person—either himself or B.H. or someone else. The district judge made no express findings regarding Shafer's intent. Under the facts of this case, however, it is reasonable to infer that Shafer's intent was to arouse or gratify either his own sexual desires or those of B.H. Shafer admitted that there was evidence that he had had "direct physical contact with BH of a sexual nature." J.A. at 120 (Sent.

Hr'g Tr. at 24). More important, Shafer is an adult who understands the implications of the sexual act he caused B.H. to perform—that self-masturbation is an act meant to invoke a sexual response in the performer or a viewer. Given these facts, it is proper to infer that Shafer had the intent necessary to categorize B.H.'s self-masturbation as "sexual contact," thereby supporting the § 2G2.1(b)(2)(A) enhancement.[10] We, therefore, affirm Shafer's sentence.

## III.  CONCLUSION

Because, under the circumstances of this case, B.H.'s self-masturbation constitutes "sexual contact," we conclude that the district court did not err in imposing a § 2G2.1(b)(2)(A) enhancement in calculating Shafer's sentence upon his conviction for violating 18 U.S.C. § 2251(a) by causing a child to engage in sexually explicit conduct, including self-masturbation, for the purposes of producing visual depictions of such conduct. Therefore, we **AFFIRM** Shafer's sentence.

---

[10]As we explained above, self-masturbation clearly falls within the language of § 2246(3) and is a type of sexual abuse under certain circumstances, such as those presented by the instant case. However, it is important to stress that § 2246(3) does not itself criminalize any activity; § 2246(3) merely provides the definition of "sexual contact." Not all occurrences of "sexual contact" are criminal. Other sections of Title 18 describe the precise circumstances under which "sexual contact" is a criminal act under Federal law. *See*, *e.g.*, 18 U.S.C. § 2244. Here we hold only that in the circumstances of this case, where defendant Shafer caused a minor to self-masturbate to fulfill the defendant's impermissible intent, the § 2G2.1(b)(2)(A) enhancement applies because "the offense involved . . . sexual contact." U.S.S.G. § 2G2.1(b)(2)(A).

———————————————

**CONCURRENCE**

———————————————

TARNOW, District Judge, concurring.  I agree with Judge Moore's opinion, and I write in concurrence to emphasize the importance of legislative history.